# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHEN ALAN CRISSINGER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant.[1] ) | Case No. CIV-16-905-STE |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision for further administrative development.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL BACKGROUND

The Social Security Administration denied Plaintiff's application for disability insurance benefits initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 22-40). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 5, 2012, the alleged disability onset date. (TR. 24). At step two, the ALJ determined Mr. Crissinger had the following severe impairments: fibromyalgia, disorders of the spine, anxiety, and depression. (TR. 24). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 24).

At step four, the ALJ found that Plaintiff could not perform his past relevant work. (TR. 38). The ALJ further concluded that Mr. Crissinger had the residual functional capacity (RFC) to:

> [P]erform less than a full range of light work as defined in 20 CFR 404.1567(b). The claimant occasionally can lift/carry/push/pull 20 pounds and frequently lift/carry/push/pull 10 pounds; stand/walk 4 hours

> total in an 8 hour work day; sit 6 hours total in an 8 hour work day; never climb ladders, ropes, or scaffolds; occasionally climb stairs, balance, stoop, kneel, crouch, or crawl; occasionally reach overhead; and perform simple instructions (understand, remember, and carry out simple instructions) with superficial interaction with coworkers and supervisors, but no interaction with the public.

(TR. 35).

Based on the finding that Mr. Crissinger could not perform his past relevant work, the ALJ proceeded to step five. There, the ALJ presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 78-80). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 80). The ALJ adopted the testimony of the VE and concluded that Mr. Crissinger was not disabled based on his ability to perform the identified jobs. (TR. 39-40).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred: (1) in the evaluation of medical evidence and (2) in the credibility determination.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. THE ALJ'S EVALUATION OF THE MEDICAL EVIDENCE

In his first proposition, Mr. Crissinger argues that the ALJ erred in his evaluation of the medical evidence, namely in his consideration of: (1) an opinion from treating physician Hamid Mahmood, and (2) of an opinion from medical expert Dr. Eppstein, who testified at the hearing. The Court agrees.

### A. The ALJ's Evaluation of Dr. Mahmood's Opinion

As alleged by Plaintiff, the ALJ erred in his evaluation of opinion evidence from Plaintiff's treating physician.

**ALJ's Duty to Assess a Treating Physician's Opinion**

An ALJ must follow a particular analysis in evaluating a treating physician's opinion. First, the ALJ has to determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). An opinion is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Allman v. Colvin*, 813 F.3d 1326, 1331 (10th Cir. 2016) (citation and internal quotation marks omitted). "But if the ALJ decides that the treating physician's opinion is not entitled to controlling weight, the ALJ must then

consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* (internal quotation marks omitted).

In doing so, the ALJ must assess the opinion under a series of factors which include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1331-1332 (internal quotation marks omitted); *Krausner v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R § 404.1527.

Ultimately, an ALJ "must give good reasons for the weight assigned to a treating physician's opinion," and "[t]he reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reason for that weight." *Allman v. Colvin*, 813 F.3d at 1332. If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

### Opinion from Dr. Mahmood

Dr. Mahmood treated Plaintiff as a primary care physician from April 2007 to May 2014. (TR. 415-453, 508-509, 653-655, 684-688, 710, 781-787). On May 17,

2012, Dr. Mahmood diagnosed Plaintiff with fibromyalgia after noting that Plaintiff tested positive on 16 of 18 "trigger points" on Plaintiff's body which are used to test for the presence of the disease. (TR. 509). On March 8, 2013, Dr. Mahmood completed a "Physical Capacities Evaluation" where the physician documented Mr. Crissinger's various work-related abilities and limitations. (TR. 684-688). There, the physician diagnosed Mr. Crissinger with fibromyalgia, chronic fatigue syndrome, osteoarthritis, cervical spondylosis, PTSD, depression, and a sleep disorder. (TR. 686, 688). According to Dr. Mahmood, Plaintiff had the ability to:

- sit, stand, and walk for 1 hour during an 8-hour workday,
- frequently lift and/or carry up to 5 pounds, and
- occasionally lift and/or carry between 6-10 pounds.

(TR. 684-685). Dr. Mahmood also stated that Mr. Crissinger was unable to:

- grasp,
- push,
- pull,
- manipulate,
- use hands for repetitive motion tasks,
- operate foot controls,
- climb,
- balance,
- stoop,

6

- kneel,

- crouch,

- crawl,

- reach above shoulder level,

- work around unprotected heights,

- be around moving machinery,

- be exposed to changes in temperature, and

- be exposed to dust, fumes, and gas.

(TR. 684-685). Dr. Mahmood also stated that Plaintiff suffered from disabling pain and fatigue which: (1) precluded the attention and concentration required for simple, unskilled work and (2) would prevent working full time at even a sedentary job. (TR. 686-688).

## The ALJ's Consideration of Dr. Mahmood's Opinion

The ALJ summarized the majority of Dr. Mahmood's opinion, with the exception of the findings regarding the effects of Mr. Crissinger's fatigue and pain. (TR. 27). In doing so, the ALJ specifically disavowed Dr. Mahmood's opinions regarding Plaintiff's abilities to sit, stand, walk, lift, carry, use his hands repetitively, and operate foot controls. (TR. 27). By means of explanation, the ALJ stated:

> Dr. Mahmood's treatment records do not provide plausible explanation for the opinion the claimant can sit for only one hour during an eight-hour work day or stand/walk only one hour during an eight-hour workday. Moreover, Dr. Mahmood's records do not provide physical findings or objective test results to explain the limitations imposed as to

7

the claimant's abilities to lift or carry. Physical findings by Dr. Mahmood and others do not reveal limitations in the claimant's hands to substantiate the opinion that the claimant is unable to use his hands for repetitive motion or his feet for repetitive movements.

(TR. 27). Although the ALJ did not specifically discuss his treatment of Dr. Mahmood's remaining opinions, the Court concludes that for two reasons, the ALJ implicitly rejected them. First, the RFC is inconsistent with Dr. Mahmood's findings regarding Plaintiff's abilities to reach overhead and maintain attention and concentration for even sedentary work. *Compare* TR. 685, 687 *with* TR. 35. Second, the RFC completely omits any mention of Dr. Mahmood's opinions that Plaintiff should avoid unprotected heights, moving machinery, extreme temperature changes, or exposure to dust and fumes. (TR. 35). In what appears to be a "catch-all" explanation regarding the implicitly rejected limitations, the ALJ stated:

> While physical findings and objective test results substantiate Dr. Mahmood's diagnostic impressions, progress notes maintained by Dr. Mahmood do not document limitations consistent with those contained in the Physical Capacities Evaluation completed in March 2013 as set forth in Exhibit 22F. The limitations in 22F are inconsistent with the entirety of claimant's treatment and examination records. While the claimant has limitations, Dr. Mahmood's reports of physical examination do not substantiate the limitations he set forth in the Physical Capacities Evaluation completed in March 2013. Moreover, the claimant has been seen by many physicians at the VAMC as well as Dr. Khan and Dr. Gillan. None of these physicians documented physical findings or objective test results that substantiate Dr. Mahmood's opinion. Furthermore, Dr. Mahmood did not provide documentation of physical findings or objective test results that reasonably explain the limitations he set forth in the Physical Capacities Evaluation completed in March 2013.

(TR. 28). The ALJ concluded by stating that Dr. Mahmood's opinion was "not adopted in its entirety, but was afforded "moderate weight" because "the medical evidence of record clearly documents conditions which, in fact, impose significant limitations in the claimant's abilities to perform the physical exertion and nonexertional requirements of most jobs." (TR. 28).

In sum, the ALJ discounted Dr. Mahmood's opinions by relying on:

- a lack of support in Dr. Mahmood's treatment records, progress notes, and reports of physical examination, which allegedly failed to document physical findings or objective test results,

- an inconsistency with "the entirety" of Mr. Crissinger's treatment and examination records, and

- a lack of support in treatment notes from Dr. Khalid Khan and Dr. Muhammad Gillan.

(TR. 28). According to Mr. Crissinger, the ALJ's reasons are not "good" as required by Tenth Circuit law[2] because: (1) they lack support in the record and (2) the ALJ's insistence on objective proof to substantiate limitations related to fibromyalgia was improper based on the subjective nature of the disease. The Court agrees and notes an additional legal deficiency—due to the vagueness of the explanation, the Court is unable to sufficiently review the explanations to determine whether they are based on substantial evidence.

---

[2] *See Allman v. Colvin*, 813 F.3d at 1332.

### 1. Legal Deficiencies

The ALJ's treatment of Dr. Mahmood's RFC opinion suffers from two legal deficiencies. First, although the record contains approximately seven years of treatment records from Dr. Mahmood,[3] the ALJ did not identify him as a treating physician in the analysis. This recognition was important "because of [a treating physician's] unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (citation and quotation marks omitted). Because the ALJ did not recognize Dr. Mahmood as a treating physician, he did not initially determine whether the opinion was entitled to controlling weight, as required. *See supra*.

Second, even excusing the ALJ's failure to undergo a controlling weight analysis, she was still required to evaluate the opinion under a number of factors and "give good reasons for the weight assigned" which are "sufficiently specific to make clear to any subsequent reviewers the weight [given] . . . and the reason for that weight." *Allman v. Colvin*, 813 F.3d at 1332. The ALJ erred in this portion of the analysis as well.

The factors the ALJ must consider when analyzing any medical opinion include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and

---

[3] *See* TR. 415-453, 508-509, 653-655, 684-688, 710, 781-787.

the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1331-1332 (internal quotation marks omitted). At most, the ALJ considered the third and fourth factors, noting:

- a lack of support in records from Dr. Mahmood, Dr. Khan, and Dr. Gillan and

- an inconsistency with "the entirety" of Mr. Crissinger's treatment and examination records.

(TR. 28). Neither explanation is sufficient.

First, regarding the lack of support in treatment notes from Dr. Mahmood, Dr. Khan, or Dr. Gillan, the ALJ specifically relies on the fact that none of the physicians had documented physical findings or objective test results which would support the limitations in Dr. Mahmood's RFC. But this explanation was deficient because the nature of Mr. Crissinger's impairment—fibromyalgia—would not have necessarily been documented by objective findings.

In *Lantow v. Chater*, 98 F.3d 1349, 1996 WL 576012 (10th Cir. 1996), the Court considered similar circumstances. In *Lantow*, the claimant had submitted new evidence to the Appeals Council which included an opinion from a rheumatologist that the claimant had suffered from disabling pain due to her fibromyalgia. *Lantow v. Chater*, 1996 WL 5766012, at *1. The Appeals Council rejected the opinion due to "minimal

11

medical findings." *Id.* The District Court affirmed, but the Tenth Circuit reversed, stating:

> Because fibromyalgia, the condition afflicting claimant, is diagnosed by ruling out other diseases through medical testing, negative test results or the absence of an objective medical test to diagnose the condition cannot support a conclusion that claimant does not suffer from a potentially disabling condition. Therefore, the Appeals Council's decision to reject Dr. Newell's opinion based on "minimal medical findings," is not supported by substantial evidence.

*Id.* (internal citations omitted). *Lantow v. Chater* is persuasive. As one basis for rejecting Dr. Mahmood's RFC opinion, the ALJ relied on a lack of objective evidence in treatment notes from Drs. Mahmood, Khan, and Gillan. *See* TR. 27-28. But as in *Lantow*, the unique nature of Mr. Crissinger's fibromyalgia does not necessarily lend itself to proof through objective findings. *See Gilbert v. Astrue*, 231 F. App'x 778, 784 (10th Cir. 2007) (ALJ improperly relied on a lack of objective findings when discounting treating physician's opinion regarding claimant's fibromyalgia); *Priest v. Barnhart*, 302 F. Supp. 2d 1205, 1214 (D. Kan. 2004) (noting "there are no confirming diagnostic tests" for fibromyalgia).

Second, the ALJ relied on an inconsistency with "the entirety" of Mr. Crissinger's treatment and examination records. But the ALJ failed to explain what portion of the "entire" record was actually inconsistent with Dr. Mahmood's opinion, leaving the Court to speculate in this regard. This type of analysis is insufficient. *See Allman v. Colvin*, 813 F.3d at 1332 ("[t]he reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical

opinion and the reason for that weight."). The insufficiency mandates reversal. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (noting that the ALJ's rejection of a doctor's opinion as "inconsistent with the overall case record," was insufficient because the ALJ did not "specifically highlight those portions of the record with which [the physician's] opinion was allegedly inconsistent").

## 2. Lack of Supporting Evidence in the Record

In addition to the ALJ's legal errors in analyzing Dr. Mahmood's opinion, the rationales are not supported by substantial evidence in the record. The ALJ concluded that Dr. Mahmood's RFC opinion lacked support from the physician's own internal records as well as records from Dr. Khan and Dr. Gillan. (TR. 27-28). The Court concludes otherwise. For example, all three doctors consistently noted that Mr. Crissinger suffered from chronic joint and muscle pain and weakness attributed to fibromyalgia throughout the disability period. *See* TR. 581, 584, 660, 662, 666, 670, 674, 677, 687, 699, 701, 703, 707, 710, 716, 720, 732, 737, 739, 747, 751, 755, 787. Also, Dr. Khan and Dr. Gillan noted that Mr. Crissinger's pain affected both upper and lower extremities and the pain in his legs was aggravated when Plaintiff stood or walked. (TR. 711, 727, 749 753). And several times Dr. Gillan noted that Plaintiff tested positive for 16 to 18 out of 18 "trigger points." (TR. 588, 584, 670, 673, 687, 699, 744, 746, 750, 754, 758). Dr. Gillan also noted that due to the pain from Plaintiff's fibromyalgia, he was unable to concentrate, was suffering increased memory problems, and would be unable to work. (TR. 582, 663, 667, 670, 671, 675, 708).

13

### 3. Summary

The ALJ did not follow the correct legal standards in considering Dr. Mahmood's opinion, nor are the ALJ's reasons for rejecting the physician's opinion supported by substantial evidence. As a result, the Court remands for re-evaluation of Dr. Mahmood's opinion in accordance with the proper legal framework.

### B. The ALJ's Evaluation of Dr. Eppstein's Opinion

At the hearing, non-examining Medical Expert, Dr. Eppstein gave an opinion regarding Plaintiff which was based on his review of Mr. Crissinger's medical records. (TR. 55-60). According to Dr. Eppstein, Mr. Crissinger had the ability to:

- frequently lift and/or carry up to 10 pounds,
- occasionally lift and/or carry up to 20 pounds,
- stand and walk for 4 hours during an 8-hour workday,
- sit for 6 hours during an 8-hour workday,
- occasionally bend, stoop, crouch, crawl,
- never climb ropes, ladders, or scaffolds, and
- occasionally perform overhead work.

(TR. 58). The ALJ then asked Dr. Eppstein his opinion regarding why Dr. Mahmood's March 2013 RFC had prescribed more restrictive limitations than those found by the Medical Expert. (TR. 59). Dr. Eppstein replied that in his opinion, Dr. Mahmood had not explained the RFC or given specific reasons for his findings. (TR. 59). Dr. Eppstein also stated that he found no support in the record regarding Dr. Mahmood's findings

on Plaintiff's ability to sit, stand, and walk for only one hour during an 8-hour workday. (TR. 60).

The ALJ adopted Dr. Eppstein's RFC in its entirety. (TR. 35). Mr. Crissinger argues that the ALJ improperly afforded more weight to Dr. Eppstein's opinion in light of the combined records of Dr. Mahmood, Khan, and Gillan. (ECF No. 16:12). The Court concludes that the ALJ erred in his evaluation of Dr. Eppstein's opinion.

When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. *Id.* He must also give good reasons in his written decision for the weight he gave to the treating physician's opinion. *Id.* The Commissioner recognizes this standard of review, and contends that the ALJ properly relied on Dr. Eppstein's opinion because: "she reasonably explained the weight she gave to Dr. Eppstein's opinion [and] she also gave good reasons for the weight she assigned to the opinions of the treating physician." (ECF No. 20:28). Neither of Ms. Berryhill's arguments have merit.

First, while the ALJ summarized Dr. Eppstein's opinion, she did not compare it to Dr. Mahmood's opinion or to the opinions of Plaintiff's other treating physicians, Drs. Khan and Gillan, to see if it outweighed those opinions, as required by *Hamlin*. *See* TR. 34-35. Second, contrary to Ms. Berryhill's statement, the ALJ did not state what weight

15

she was affording Dr. Eppstein's opinion, although from the decision, the Court concludes that the ALJ implicitly adopted it in full. Third, as discussed, the ALJ did not give "good reasons" for discounting Dr. Mahmood's opinions. *See supra*. The ALJ's errors in the evaluation of Dr. Eppstein's opinion warrant remand. *See Birkinshaw v. Astrue*, 490 F. Supp. 2d 1136, 1147 (D. Kan. 2007) ("The decision must explain why the medical expert's opinion outweighs the opinion of the treating physician."); *Warren v. Barnhart*, No. 05-2331-JWL, 2006 WL 4050700, at *7 (D. Kan. July 10, 2006) (reversing because the decision "contains no analysis of the expert's medical opinion, evaluation of the opinion pursuant to the regulatory factors, or explanation of how the expert's opinion outweighs that of the treating physician.")

## VI. THE ALJ'S CREDIBILITY DETERMINATION

In evaluating Mr. Crissinger's credibility, the ALJ stated that Plaintiff's allegations "[we]re not supported by the medical evidence to the extent alleged and [we]re not sufficiently credible to support a finding of disability." (TR. 38). Plaintiff challenges the credibility finding, pointing to:

- his persistent complaints of pain,
- multiple medications and treatments, and
- the fact that fibromyalgia does not always present by means of objective findings.

(ECF No. 16:14-15). According to Mr. Crissinger, "[t]he evidence of record overwhelms the reasons the ALJ [gave] for dismissing [his] subjective complaints." (ECF No. 16:15).

The ALJ had previously discounted Dr. Mahmood's opinion based on a lack of supporting evidence in the form of objective findings. However, as discussed, the unique nature of fibromyalgia is based in large part on subjective complaints of pain. *See supra*. Drs. Mahmood, Khan, and Gillan repeatedly documented Plaintiff's pain throughout the disability period. *See supra*. The ALJ's re-evaluation of Dr. Mahmood's opinion will consequently involve a re-examination of the record as discussed. *See supra*. Accordingly, this re-examination may affect the credibility findings on remand. Because the assessment of Dr. Mahmood's opinion and the Plaintiff's credibility are inexorably intertwined, the Court makes no findings on the propriety of the ALJ's credibility analysis as it stands. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."); *Gilbert v. Astrue*, 231 F. App'x at 785 ("Because the ALJ's assessment of [a treating physician's] opinions [regarding fibromyalgia] and Ms. Gilbert's credibility were substantially intertwined, on remand we direct the ALJ also to consider her fibromyalgia in reevaluating her credibility.").

**ORDER**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **REVERSES** the Commissioner's decision and **REMANDS** for further administrative proceedings consistent with this opinion.

ENTERED on May 31, 2017.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE